Everyone, we're ready to start this afternoon's proceedings. I want to thank all the lawyers for being willing to Participate by by video. We do appreciate that and this would be a good time Just as a reminder for the lawyers who are not speaking to please just remember to mute your audio So with that said madam deputy, would you please call the first case for argument today? 19 22 62 South Dakota United States v. Xavier Zephier Miss Quinn Thank you May it please the court. My name is Molly Quinn. I represent the appellant Xavier Zephier We're asking this court to reverse and remand for a new trial I'm going to start with the rule 412 issue the district court aired and excluding evidence that the alleged victim had been sexually assaulted by another person on another occasion Zephier only offered this evidence to rebut the government's expert testimony about the effects of sexual assault The complete exclusion of this evidence violated Zephier's Fifth Amendment right to present a complete defense in a Sixth Amendment right to confront and cross-examine his accuser This case is on all fours with bare stops There the Eighth Circuit held that it was reversible error to refuse to admit the basic factual details of a prior sexual assault When that evidence is offered to provide an alternative explanation for the government's expert testimony about the effects of sexual assault Here the exclusion of any evidence that the alleged victim had suffered a different sexual assault created a risk that the jury would match up the experts testimony about mental health Substance abuse and emotional effects of sexual assault with the alleged victims testimony about her drug use self-cutting and mental health problems Conclude based on that matchup that she had in fact been raped and in the absence of any evidence of another perpetrator Determine that it was Zephier who did it And in fact the government invited the jury to do just that in the final lines of the closing argument There the government highlighted the experts testimony specifically linked it to the victims testimony and asked what's the one event that precipitated this and Then asserted that it was the assault by Zephier And the district court also erred in allowing Hirengraver's expert testimony at all The only purpose for this testimony was improper bolstering It wasn't testimony just testimony about things the jury might not understand Otherwise like why a victim might delay reporting or change the details of the story over time or why there might be a lack of physical evidence It was testimony linking the general characteristics of sexual assault with being a victim of such assault And here the expert went beyond that and even said that these negative effects will last longer or can last longer If the victim reported the incident and people didn't believe her or the victim had a bad Experience in the criminal justice system or didn't get the end result. She wanted in the criminal justice system Counselor that actually happened in this case to the victim report the previous sexual assault And didn't get the outcomes you wanted No, the the point isn't that she reported the prior sexual assault the the prejudicial impact of that testimony here is that It makes the jury want to not make Amelia's mental health harms Any worse by giving her a bad result in this criminal justice system. I see I see Okay, so you're not connecting it back to the prior assault. I see. Sorry. I misunderstood. That's correct. This is We do think that the admission of the experts testimony alone was erroneous as a standalone issue Made even more egregious by the exclusion of the 412 evidence While I've got your back on the previous subject, which I apologize about but since you're there anyways We have a case called Bonkos which talks about temporal proximity what it's kind of the that the later case after bear stops and it suggests where The the assault is is the sexual assaults too old Then maybe the bear stops rule doesn't really apply and I'd like to give you a chance to respond to that Thank you I'll start with addressing the timing issue and I know that the party's kind of assumed and we certainly did in our briefing that the Prior incident was several years before the incident in this case But I do want to make clear that we don't actually know when that incident was The defense was precluded from asking the victim about it or asking any other witness about it So we actually don't have that detail about when it took place But looking at what we do know it may actually be closer in time than than we assumed or that we think And I'm looking at the actual 412 notice attached the mother's statement to the FBI Sarah Ralston the victim's mother in February of 2019 was when she said I think Amelia was raped by another individual Several years ago when she was younger and this incident was in October 2017 So we already have about a year and a half between the mother saying several years ago There was another rape and when this incident was and so I think if you piece all that together several years ago places this the prior assault closer in time than maybe it first appears by just the the generic reference to several years Ago, and then I didn't want to talk about but counsel wouldn't that place it like I mean just a common parlance four or five years before I You know, we don't know what Several years ago You know, she didn't say a few which may be two or I you know I don't know what she meant by that But the point is that Zephyr wasn't able to deduce that information or ask any specific questions even about a basic Basic piece of information like that about when this prior assault took place and that doesn't more egregious than in bear stops And I didn't want to follow up on The hot goes case as well One of the the ways that the hot goes court distinguished bear stops in that case again was the timing element But that was offered for a different purpose in that case and the missing piece from that case that's present Here's is the expert testimony I think the key thing that ties this case to bear stops is that there's an expert witness who is testifying about These are these general characteristics that people who have been raped or assaulted show And then we have the victim coming in and testifying testifying about those general characteristics That wasn't present in the hot goes case or any of those other cases. I Have a question about your standalone argument that the expert testimony should not have been admitted at all and you did make a distinction you said this is not the kind of situation where you're the The expert is explaining why someone didn't leave something like that Which I think maybe you're referring to our Johnson case where we sort of extended this idea of expert testimony from children to an adult Do you? How do you think your argument is precluded by Johnson or do you think there is room for that distinction? Clearly, I did not think our argument is precluded by Johnson. I I think the key Kind of similarity between these two cases is merely just the identity of the expert witness The testimony in Johnson at least as we know from that opinion was very specific to a domestic Situation of long-standing domestic violence situation that did admittedly involve aspects of sexual abuse But not just that and if you look at the way the court there described her testimony why it was admissible why it's reliable They talked about her testimony about the Duluth model about the power and control wheel about the cycle of violence And then even the testimony about typical victim responses what the court there said She was testifying about again, like you were saying is why would you why would a person remain in an abusive relationship? Why wouldn't they report the abuse? Why wouldn't they attempt to escape and that's Not not really an issue in this case at least with respect to Amelia the victim's testimony And and those aren't really what? Chris the hearing-giver was testifying about at all in this case She was testifying much more generally about you know People who have self-cutting problems people who have substance abuse problems people who have depression anxiety Those are very very common. She emphasized For people who have been sexually assaulted, so that's not tested her testimony here wasn't really covered at all Johnson opinion so I don't think that it precludes our argument here, and I also think a distinction is that in the Johnson case the government presented that testimony almost as a defense against a claim that you know, the victims not credible because She didn't leave this abuse or she didn't report the abuse or maybe she recanted or those types of things Here that wasn't really an issue with Amelia that here the government is using that more weaponizing that expert testimony and using it affirmatively To basically bolster the alleged victims testimony that she suffered these these general mental health and substance abuse problems and those match up with victims of sexual assault I want to address the The suppression issue as well the district court errant in denying the motion to suppress Zephyr's statements Zephyr unequivocally invoked his right to counsel that's undisputed Edwards then provides a bright-line rule the interrogation had to stop unless either Counsel was made available or Zephyr himself Re-initiated the conversation and neither of those things happened here instead It was the agents who re-initiated the conversation by immediately demanding that Zephyr submit to a search warrant for his DNA And this was interrogation within the meaning of And it was reasonably likely to elicit an incriminating response It was an immediate demand that Zephyr provide evidence from his body Related to this investigation without any break in time place or conversation What do we do with the follow-up didn't the agent then say no no this is different. I don't want you to This is and you have no choice here got to give the DNA I don't want that to influence your decision to to talk is that the kind of thing maybe you we should be Encouraging agents to do it almost seems like at that juncture. Maybe that was the right thing for him to say I Don't think that it was a bad thing for him to say I think the right thing under Edwards for him to say was Okay, we'll get you an attorney or I'm sorry. I can't take your statement you invoked your right to counsel I'm not saying that he was rude or acted in bad faith I I just don't think that that stands up against the Edwards bright-line rule that if the agents were the ones who re-initiated Interrogation which they were by presenting that mandatory search warrant for evidence from Zephyr's body it related to this offense Then you know, it doesn't really matter how voluntary Xavier statements were later on or how uncoursed in that context so I think it's it's that bright-line rule of Edwards that it just isn't concerned with how Polite and kind of follow-up be the agent was later on as long as that the presentation of the warrant in that context Was interrogation Edwards provides that clear line that nothing after that is Is admissible? What what was an agent I guess to do there, right? So he's got he's got this warrant and he wants he doesn't want to have to drive back, right? So does he hand it to him and say nothing? I mean He has a right to get the war and actually I'm just trying to figure out what an agent in that circumstance could possibly do Right. I think he has a couple options The first option that Edwards and Miranda would suggest is that they get Zephyr an attorney The second option would be they could refuse to take a statement at that time A third option would be they could come back later with the warrant I know I think it was the magistrate judge here who was concerned about kind of the distance and it would have been really inconvenient But if you look at agent Mertz's trial testimony, he was out in this area on He was looking for Zephyr didn't find him and then, you know came back three days later with this warrant So it's not as onerous as as the magistrate judge might have made it seem and so I think that You know where we don't have to address What happens if they come back with a warrant four days later and in the defendant decided a suspect decides to get a statement here We have I mean this happened without a moment of silence And so again, I would just reiterate that the officers the agents could have gotten him an attorney They could have refused to take a statement until there was at least some cooling off period or they could have waited until he had His tribal arraignment and got his attorney there. So once once, you know, maybe this isn't what you're saying But once the the defendant or the suspect invokes the right to counsel Essentially, they have to be given counsel before you can execute the warrant to take the DNA swap Right, I mean they can't just they can't I mean if they for instance of two lawyers water It should be two agents walk in and they say we have a warrant and he says I want to have one a lawyer Right now they can't say anything else. They have to turn around and leave unless they unless the defendant has a lawyer. I Would agree with that. I guess I would say they can't take a statement from the suspect I think this doesn't prohibit their ability to collect the DNA evidence pursuant to a warrant But it does affect their ability to then take a statement if that amounted to interrogation Which at least under the facts and circumstances here it did And there's no further questions I would reserve the remainder of my time. All right, Miss Maminga Thank you, your honor My name is Jennifer Maminga, and I'm an assistant United States attorney in the District of South Dakota Sioux Falls office We are asking this court to affirm the decisions of the district court on the four issues Raised by the defense in this case and to find that the district court did not air in First denying the defendant's motion to suppress the statements. He made to law enforcement Second in allowing expert testimony concerning the common characteristics of sexual assault victims third in barring evidence of a prior rape of the victim in this case and fourth in instructing the jury as to silence in the face of an accusation and I'll follow the order that Miss Quinn followed in her argument and start initially with the 412 evidence Pertaining to a prior rape of the victim in this case Evidence of a prior rape of the victim in this case was Attempted to be offered by the defense during trial as an alternative explanation for the defendant's emotion Injuries, which is barred by rule 412 and was soundly rejected by the district court The district court also found that exclusion of this evidence did not rise to the level of a constitutional violation Which was the correct ruling in this case? Both United States versus never misses a shot and United States versus hot ghosts Have held that evidence of prior sexual assault against a victim can be excluded by a district court both of these case distinguish from bear stops, which was the Which is appropriate here as well What we're looking at here is an allegation of a rape The exact statement from the mother was that she believed the victim had been raped Several years ago when she was younger by a different individual This is I want to ask you about that that point I'm gonna have a couple seconds early, but I apologize But I wanted to I wanted to press you on this which is I Think this case is different from bear stops for one very important reason the nature of the expert testimony If you read what the expert said the expert said that the effects that she was describing I think it was a sheet the expert the effects that she was describing can last for a very long time And I think that makes it different right because at that point you're you're you're I Guess it's really the combination of the second and third issue We'll get to in a second, but I wonder if that just on a preliminary level undermines the bear stop rationale about timing And I understand that point your honor I don't believe that it does because I think when we talk about bear stops We were talking about the rape of a young boy that took place from bear stops And then at the exact same proximate time he was going through the sexual assault from the three older boys. So we're talking about Contemporaneous sexual assault going on here. We had such a spread of time that went on that I don't know that we're looking at the same thing, especially when we've got testimony about Amelia's precipitous drop-off right after of the event with the defendant took place Let me brought it. Let me broaden it a little bit and then I would tell you exactly what's bothering me about this case It's the combination of issues two and three. It's the expert testimony that says Look these are the typical behaviors you see from sexual assault victims and they can last for a very long time So in my opinion that sort of ties one hand one of the defendants hands behind his back in terms of making the case Then you add issue three, which is he wants to come up with an alternative rationale Consistent with what the experts said that says well actually The victim here was sexually assaulted several years ago And then the district court basically took that way and tied the other hand behind his back. I got to say it I'm really concerned because I'm not sure that this is exactly bear stops But I also don't think it's that it's a later case where we said it's you know, the temporal proximity matters. So Unless you could give it to me Otherwise, I got to say I'm really concerned and I'm give you a chance to address it and I understand that certainly Um, I think that when we look at this case versus what we're looking at bear stops We're also looking at just a general different case in bear stops There wasn't any other evidence besides the young boy's own testimony that the rape had occurred here We're dealing with also an additional quantum of DNA evidence We had multiple witnesses that came in and testified talked about Amelia's immediate reaction right after the rape She had told several people that she'd been raped by the defendant Including other individuals who were at the home when this happened her mother law enforcement a nurse practitioner she never wavered on that we have a We're just looking at a different factual case I think when we look at bear stops that puts this in a different playing field Is this is that really a harmless error analysis or does that get at the bear stops issue? I think that probably does go more to the harmless error analysis, which ultimately is Where we end up I think on this case, but I I do understand when you look at the bear stops issue in and of itself what you're saying with the expert testimony paired with the Timing and the fact that she did say yes, these effects can last a long time. However here we also had testimony And cross that was elicited from both the defendant and her mother about alternative reasons She might have these types of behaviors a rough upbringing being subjected to watching her mother be in abusive relationships her own experience in abusive relationships So she the defense certainly wasn't limited to just this purely sanitized Victim who had no other alternative reason for why she might have some of these PTSD esque type symptoms, so there were alternative Venues the defendant was able to go down and to talk about with the defense them or with the Victim that may have offered some other explanations So it's not as sanitized of a story as I believe that the defense has put forward I think that the jury was able to see that Amelia was a person who had Lived through some other difficulties and those might be a reason for her behavior as well Why why isn't this case if you just go to Again, what's been referenced or the standalone argument against the expert? Why isn't this case different than say Johnson, which is sort of the court said in this particular situation? We don't see a reason why we can't apply the same rule for an adult that we did with a child alleged victim Because of sort of the unusual Characteristics and things that need to be explained to the jury Why is just sort of general mental health problems significant and in concerning? But why is that outside the scope of a lay jury's ability to understand? I think here it was an of the assistance to the jury to have expert testimony on the variety of The actions the victim can have to a sexual assault because we didn't have just one victim of sexual assault testifying here We had three women testify that they had been sexually assaulted by this defendant and frankly their reactions to that ran the gamut Not all of them reacted in the same way. Not all of them disclosed at the same time. Not all of them immediately wanted a law enforcement investigation into this and I believe it was helpful to the jury to understand that there is not one standard reaction Even if you're dealing with adults, I think that Johnson's extension of The rule that allows expert testimony and we're talking about child sexual abuse to adult sexual abuse is very helpful in these cases and serves to show the juror the jury that there isn't just one way to act if you've been raped or one way to act if You're the victim of a attempted or effectuated sexual assault We also believe that in terms of the Evidence that was barred of the 412 motion of the prior rate that it didn't substantially prejudice the outcome of the case As I discussed it was ample evidence for conviction Where the admission of the prior rate likely would not sway the outcome of this trial Multiple witnesses testified there was DNA teen witnesses as we discussed testified to Experiencing very similar sexual assault at the hand of the defendant And where he had attempted to rape or actually did rape them while they were drunk Which was very similar to the rape of Amelia where she was raped by force while she was asleep As to the admission of Krista here engravers expert testimony We believe that does fall squarely within or what this court Previously ruled was allowable testimony by miss here engraver under United States speed versus Johnson that testimony as to characteristics of adult sexual assault was upheld by this court it was not limited to only the characteristics of The domestic assault victims or only testimony that pertains to the Duluth model Here her testimony was not used merely to vouch or to bolster in fact on cross-examination when she was asked if she'd reviewed any materials from this case or if she had any specific knowledge of the rape of Amelia or the 413 witnesses she said no she had not looked at any materials that pertain to this What about the testimony that she gave the expert gave regarding? the I guess increased Troubles if so if the victim isn't believed if the criminal justice system doesn't go her way Doesn't that sort of tell the give the jury some kind of a An indication that in order to you know, make sure that this young person is okay They have to believe her as well Isn't there a risk there? There may be a risk there. I Certainly don't believe that that was the sole focus of her testimony though. She did discuss numerous numerous different attributes Individual can take on or different factors that can influence one's Ability to cope with and react to a sexual assault. So it certainly wasn't highlighted alone to Get that it wasn't highlighted alone, but isn't it a direct appeal to prejudice and isn't that a huge problem? And I use the direct appeal to passion It's a direct appeal to to to prejudice. It's it's it's you gotta believe these people You know and that's all out there in the society generally already that if you don't believe people they're traumatized forever and horrible things happen to them Then and while that may be true. I don't see how that has any place in a trial Your honor and I do I do take that point I think that ultimately the breadth of her testimony went beyond just a call to passion or a call to prejudice and it Truly did discuss that variety of reactions that individuals can have had she testified alone about The Detrimonious effects upon a person if they're not believed. Yes, I can I take your point wholeheartedly that that would be Overly prejudicial testimony, but in considering the totality of her testimony that was not just limited to that I don't believe that that rose to that type of level where it was overly prejudicial Beyond that if her testimony Was offered in error that was again a harmless error Miss hearing graver Her testimony really without it. I don't believe there would have been a different result to the trial again We had the multiple witnesses the DNA evidence Miss Zephyr's own testimony and The 413 witnesses as well. I I believe without this. I don't think that we're looking at a different result I do want to talk just very briefly about the jury instruction Issue in the question I've got is basically this is that for many years the pattern and I know we that the pattern jury Instructions are the product of a bunch of district judges and lawyers and they're not binding on us. But for years the the pattern jury instruction committee in this circuit said that Then that no instruction should be given in this area because it's it's it's well within the jury's ability to understand and Eventually what happened is that there was a great deal of discussion a couple of cases and they said well, you know If the defendant asks for the instruction you ought to give it Are you aware of any case anywhere in which this type of instruction has been given by a district court? Over the objection of the defendant. I am NOT your honor I'm not aware of any case federally that takes up this type of instruction. Frankly, I did exhaustive research In my research getting ready for today, and I would like to submit this in a supplemental 28 J letter I find that the third and seventh circuits both allow this instruction Neither of which in their pattern jury instructions say that this instruction is limited to only being requested by the defendant so it appears that the 8th circuit and then the 9th circuits abrogated instruction are Limited in any instructor limited as to instructing that this would be an instruction requested by the defense I believe in this case offering that instruction really Served as an additional guardrail for the defendant ultimately The prosecution would have been free to argue this in our closing argument Without the jury having been instructed as to how they should view that type of evidence So this was probably of a better benefit to the defendant to have the instruction than it would have had it not been addressed at all The jury was instructed that they needed to determine whether or not he had heard This statement and then determine whether or not it was a type of statement that he should have denied if it was truthful Or if it was not truthful. I'm seeing that my time has run out. Are there any additional questions? Thank you, thank you for your argument miss Quinn, I think you did reserve some time or prepared to hear your rebuttal I Think you'll need to unmute your Audio thank you. Sorry about that. I would like to start with the issue of harmless error First of all, the exclusion of the rule 412 evidence was a constitutional violation So any error would have to be harmless beyond a reasonable doubt and I do not think the government has met that burden here Um, but more generally this these errors relating to the experts testimony and the jury instruction and the exclusion of the 412 evidence We're just not harmless The alleged victim's credibility in this case was the central issue The question here was not whether there was sexual intercourse at all The question was was this a forcible rape within the meaning of the statute or was it? consensual sex or something else that's less than the level of a forcible rape and any evidence that Bolstered the credibility of the complaining witness by saying by matching up her general Description of her mental health and her emotional effects with being a victim of sexual assault That was just improper bolstering and it cannot be considered to be harmless in this case And the DNA evidence doesn't go to that central question either. It doesn't go to the question of whether Whether this was a forcible rape or whether this was something something less and I think What happened in this case was that? This expert witness was something was evidence that the government brought out the government used that evidence as a sword It probably was marginal. We would argue it wasn't relevant at all It's at most marginally relevant, but the government did everything they could to match up that expert testimony To the alleged victims testimony about her experiences after the assault but then cut off any efforts by Zephyr To rebut against that and to say well there may be another reason why she had these experiences and just the general cross-examination About well, you know you grew up in a house with an abusive relationship and parents who use drugs and alcohol That just wasn't enough to cut back against the power of that expert testimony in this case And so we we do submit that that Christy Hearn-Graves testimony in general was unfairly prejudicial for all the reasons we've already talked about but especially Combined with the exclusion of the rule 412 evidence that there was In all likelihood another assault within the same general time period that could have explained some of these effects And it because there they were constitutional and evidentiary areas that evidentiary areas that were not harmless We would ask the court to reverse and remand for a new trial. Thank you Thank you counsel for your arguments been very helpful, and we will take the matter under advisement